IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL HOSFELT and RAY GREER,** | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| vs. | ) No. 24-2170-SPM <br> ) |
| **JASON DANDIDGE, et al.,** | ) <br> ) |
| Defendants. | ) |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AS TO COUNTS IX AND X OF THE FIRST AMENDED COMPLAINT**

Comes now Plaintiffs, by and through their attorneys, Thomas G. Maag and the Maag Law Firm, LLC, and move this Honorable Court for a PRELIMIARY INJUNCTION as to Counts IX and X of the First Amended Complaint. In so moving Plaintiffs adopt their exhibits previously filed with the original motion for preliminary injunction in this case. (Doc, 19)

**INTRODUCTION**

Plaintiffs are two ordinary Illinois citizens that, until the events at issue in this case, (1) lawfully possessed FOID cards and (2) lawfully possessed firearms and ammunition. Plaintiffs, based on little or no evidence, were arrested by the County Defendants, but the State's Attorney refused to file actual charges. In response, the County Defendants apparently filed a DCFS complaint (which was likewise found to be unfounded) and the Clear and Present Danger reports at issue in this case, that resulted in Defendant Kelly revoking Plaintiff's FOID cards. This motion only seeks relief from Defendant Kelly, at this time.

**STANDARD**

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural res. Def. Council*, 555 U.S. 7 (2009). To obtain a preliminary injunction, a plaintiff must establish

(1) without such relief, he will suffer irreparable harm;

(2) traditional legal remedies would be inadequate; and

(3) he has some likelihood of success on the merits.

*Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

While it is anticipated that Defendant *might* argue that Plaintiff's have failed to exhaust administrative remedies, the Supreme Court has stated there is no duty to exhaust state administrative remedies before pursuing an action under 42 U.S.C. § 1983. *Patsy v. Board of Regents of State of Florida,* 457 U.S. 496 (1982).

A proper party for injunctive relief is the person who "would be responsible for ensuring that any injunctive relief is carried out." *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Defendant Kelly, as the Director of the Illinois State Police, would be responsible for ensuring that injunctive relief is carried out.

In the threshold phase, the party seeking the preliminary injunction has the burden of demonstrating that (1) he has a reasonable likelihood of success on the merits of his underlying claims, (2) traditional legal remedies are inadequate, and (3) absent the injunction he will suffer irreparable harm in the period prior to the final resolution of his claims. *Valencia*, 883 F.3d at 965.

If the moving party makes the requisite showing at the threshold phase, the court moves to the balancing phase, where it weighs the harm the plaintiff will suffer without an injunction against the harm the other parties and the public will suffer if the court were to grant the requested relief. *Valencia*, 883 F.3d at 965. This assessment is made on a sliding scale: "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." Id. (citation omitted).

**Applying the Standards**

### A. Irreparable Harm

A moving party must demonstrate that he or she will likely suffer irreparable harm absent obtaining preliminary injunctive relief. See *Whitaker by Whitaker v. Kenosha Unified School District No. 1 Board of Education,* 858 F.3d 1034, 1044 (7th Cir. 2017). "Harm is irreparable if legal remedies are inadequate to cure it. Inadequate `does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered.'" *Life Spine, Inc. v. Aegis Spine, Inc*., 8 F.4th 531, 545 (7th Cir. 2021) (*quoting Foodcomm Intern. v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003) (internal citation omitted)).

The requirement of irreparable harm eliminates those cases where, although the ultimate relief sought is equitable, a plaintiff can wait until the end of trial to get that relief. *Roland Mach. Co. v. Dresser Indus., Inc*., 749 F.2d 380, 386 (7th Cir. 1984). Interim injunctive relief is only available if a plaintiff will suffer irreparable harm before final judgment is entered, which requires "more than a mere possibility of harm." *Whitaker*, 858 F.3d at 1045. It does not, however, require that the harm actually occur before injunctive relief is warranted nor does it require that the harm be certain to occur before a court may grant relief on the merits. Id. Instead,

the Seventh Circuit has found irreparable harm when it "cannot be prevented or fully rectified by the final judgment after trial." Id. (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1089 (7th Cir. 2008)).

For some constitutional violations, particularly involving First Amendment claims, irreparable harm is presumed. *Christian Legal Society v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006). Although the Supreme Court has not recognized a presumption of irreparable harm in regard to Second Amendment violations, it has emphasized that the Second Amendment and the constitutional right to bear arms for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 142 S. Ct. at 2156 (citing *McDonald v. City of Chi., Ill.,* 561 U.S. 742, 780, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (plurality opinion)). When a law is facially challenged under the Second Amendment, "the form of the claim and the substance of the Second Amendment right" create a "harm [that] is properly regarded as irreparable and having no adequate remedy at law." *Ezell*, 651 F.3d at 699-700.

Assuming arguendo that there is no presumption of harm for an alleged violation of the Second Amendment, or for lack of due process, Plaintiffs still satisfy this element. For example, Plaintiffs are no longer able to purchase any firearm or ammunition, at all, for any purpose, anywhere, at any time. Likewise, this is not some short-term emergency limitation, the ban, as a practical matter, is permanent, or at least until further notice. When further notice might come, cannot be determined. These harms are irreparable and in direct violation of the Second Amendment right to bear arms in self-defense, and imposed in violation of basic due process rights. There is no question that the right to armed self-defense is limited by the Clear and Present Danger statute and findings, and in fact, is prohibited altogether. Plaintiffs are not even

permitted to possess a constitutionally protected and non-lethal stun gun, without this FOID card, which is revoked. *Caetano v. Massachusetts*, 577 U.S. 411 (2016).

The court finds that both Plaintiffs are, in fact, suffering irreparable harm, the first step is met.

### B. No Adequate Remedy at Law

Plaintiffs must next make a threshold showing that any remedy at law would be inadequate. An inadequate remedy of law is not necessarily wholly ineffectual; instead, it is deficient when compared to the harm suffered. See *Foodcomm*, 328 F.3d at 304. Accordingly, the Court must ask if the Plaintiffs can and will be made whole if they prevail upon the merits and are awarded damages. See *Roland*, 749 F.2d at 386. That answer is "No."

But for the Clear and Present danger revocation, Plaintiffs would still have their firearms and ammunition. Should either one attempt possess so much as a single round of ammunition, or a single firearm, or even a single stun gun, to do so, he could face criminal penalties. There is no monetary award that can compensate for such an injury and make them whole. Furthermore, under the 11th Amendment, it is unlikely that a monetary award can be entered against the State, thus, likely precluding a remedy at law, adequate or otherwise.

Again, there is clearly no adequate remedy at law that would make Plaintiffs whole.

### C. Likelihood of Success on the Merits

This Court must now consider the third issue, likelihood of success on the merits. Plaintiffs rely on recent Supreme Court decisions that made it clear that the Second Amendment protects the possession and use of at least some kind of firearm. see *Bruen*, 142 S.Ct. 2111 (quoting *Heller*, 554 U.S. at 627, 128 S.Ct. 2783). Plaintiffs contend there can be no question

regarding the likelihood of success because without a FOID card, revoked by Defendant, they can lawfully posses *no kind of firearm*, of even a non-lethal stun gun.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. A plain reading of this text would seem to lend itself to the notion that this ban on mere possession is in fact violative of the Second Amendment.

The full test, under *Bruen,* is:

When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's `unqualified command.'

Bruen, 142 S. Ct. at 2129-30.

Since *Bruen,* the Supreme Court decided *United States v. Rahimi*, 602 U.S. ___ (2024). *Rahimi* made two things clear.  First, that Rahimi was not a responsible citizen was not sufficient to deny him his Second Amendment rights.  Second, "[w]hen an individual poses a clear threat of violence to another, the threatening individual may be disarmed."

In this case, while Plaintiffs were disarmed under a "clear and present danger" statute, the most that the state can state with certainty is that the Plaintiffs were found, in their own backyard, perhaps a little bit drunk, with the guns locked in a padlocked gun cabinet inside the house.

Plaintiffs were outside of city limits, and it was and is not unlawful for them to fire said firearms, even assuming they did so, which was denied.

No identifiable person was threatened, and despite the arrests, no criminal charges were actually filed. In fact, the arresting officers apparently also referred Plaintiff Hosfelt to the DCFS, who likewise found the referral without any merit at all, and retained the filing as a frivolous filing, to prevent it from happening again. As to the actions of the Firearms Services Bureau, no notice or opportunity to be heard was presented prior to the revocation. In fact, the first notice by Plaintiffs was that their firearms licenses were invalid, the exact reasons, not stated. And Illinois law, Plaintiffs cannot even request copies of their their own FOID file under the Illinois Freedom of Information Act. *Hart v. ISP*, 2023 IL 128275

In sum, the likelihood of the success of Plaintiff's on the merits is extremely high, barring Defendant from being able to present strong evidence that Plaintiffs are an actual criminal threat to some specific person, which is highly unlikely based on what is known at this point.

## PHASE TWO: BALANCING OF HARMS AND THE PUBLIC INTEREST

At phase two, a court proceeds to the balancing analysis; weighing the harm the denial of a preliminary injunction would cause a plaintiff against the harm to a defendant if a court were to grant it. *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018). This balancing process involves a "sliding scale" approach: the more likely a plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). That is, this Court must consider the irreparable harm to Plaintiffs if the preliminary injunction is wrongfully denied versus the irreparable harm to Defendants if the preliminary injunction is wrongfully granted. See *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). The Court must also consider the effects, if any, the grant or denial of the preliminary injunction would have on non-parties, i.e., the public interest. Id.

## ARGUMENT

There is no question that Plaintiffs are harmed by the lack of a FOID card, and the inability to lawfully possess firearms for any purpose whatsoever, and will continue to be harmed if this Court denies the motion for preliminary injunction. A constitutional right is at stake. Again, Plaintiffs cannot purchase or possess any firearm or ammunition at all, not just their firearm of choice, nor can Plaintiffs exercise their right to self-defense with a firearm, or a stun gun, they are literally disarmed in toto.  in the manner they choose.

On the opposite end, there can be "no harm to a [government agency] when it is prevented from enforcing an unconstitutional statute." *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 620 (7th Cir. 2004); see also *Does v. City of Indianapolis*, Case No. 1:06-CV-865-RLY-WTL, 2006 WL 2927598, at *11 (S.D. Ind. Oct. 5, 2006) ("Defendants will not be harmed by having to conform to constitutional standards, and without an injunction, plaintiffs will continue to be denied their constitutional rights").

However, this does not end the inquiry. The Court must also balance the severity of totally banning Plaintiffs from possessing arms, for the foreseeable future, against the core Second Amendment right of armed self-defense with the public-interest justification of protecting Illinois communities.

The need for self-defense is not insignificant. According to a report by the Department of Justice, Bureau of Justice Statistics, household members are present for almost a third of all burglaries and become victims of violent crimes in more than a quarter of those cases. Studies on the frequency of defensive firearm uses in the United States have determined that there are up to 2.5 million instances each year in which civilians used firearms for home defense.  (citing Gary Kleck, Marc Gertz, Armed Resistance to Crime: The Prevalence and Nature of Self-Defense with

a Gun, 86 J. CRIM. L. & CRIMINOLOGY 150, 164 (1995)). Handguns, barred at this point to Plaintiffs, are "the most preferred firearm in the nation to `keep' and use for protection of one's home and family." *McDonald*, 561 U.S. at 767, 130 S.Ct. 3020 (quoting Heller, 554 U.S. at 629, 128 S.Ct. 2783).

In no way do Plaintiffs, or counsel minimize the damage caused when a firearm is used for an unlawful purpose; however, the right to bear arms is one of the rights guaranteed by the Constitution. Moreover, this FOID revocations did not just regulate the rights of the Plaintiffs to defend themselves; it completely obliterated that right by criminalizing the possession, purchase and the sale of every conceivable "arms" otherwise available to Plaintiffs. Accordingly, the balance of harms favors the Plaintiffs.

## CONCLUSION

To this end, Plaintiffs do not ask that this Court preliminarily enjoin the FOID Card Act, in its entirety, or even the Clear and Present Danger aspects of it, in the entirety. Only that this Court, order Plaintiff's FOID cards be reinstated, pending further and final order of this Court, so that Plaintiffs may lawfully keep and bear arms, which this action proceeds to final judgment on the merits.

In ruling on this motion, Plaintiffs would appreciate, if the Court thinks it helpful, in addition to the documents attached hereto, to present live testimony.

| | |
|---|---|
| 12-12-2024 | Respectfully Submitted, |

                                                                                                                                                                                   By<u>S</u><u>Thomas G. Maag</u>
Thomas G. Maag #6272640
Maag Law Firm, LLC
22 West Lorena Avenue
Wood River, IL  62095
618-216-5291
maaglawoffice@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed, using the CM/ECF system, which will send notification to all registered users.

Dated:  12-12-2024                                        s/Thomas G. Maag