## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MICHAEL HOSFELT and RAY GREER,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 24-CV-02170-SPM** |
| **JASON DANDIDGE, WALKER DSN 372, FSB EMPLOYEE #1, and BRENDAN KELLY, in his official capacity as Director of the Illinois State Police,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of Defendants Jason Sandidge[1] and Walker DSN 372's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 45), and Defendant Brendan Kelly's Motion to Dismiss Counts IX and X (Doc. 46). Having been fully informed of the issues presented, this Court **DENIES** Defendants Jason Sandidge and Walker DSN 372's Motion to Dismiss, and **GRANTS** Defendant Brendan Kelly's Motion to Dismiss.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Michael L. Hosfelt and Ray C. Greer initially filed their Complaint in the Circuit Court of the Third Judicial Circuit in Madison County, Illinois on

---

[1] The Court notes that this Defendant's name has been spelled the following ways: "Dandidge," "Sandidge," "Sanderson," and "Sandage." This Court will refer to this Defendant in this Order as "Sandidge."

August 5, 2024 (hereinafter "Madison County Circuit Court"). *See* Case No. 2024LA001034 (Ill. Cir. Ct.). Hosfelt and Greer brought claims for alleged violations of their constitutional rights under 42 U.S.C. § 1983 against the following Defendants: Jason Sandidge and Walker DSN 372 (hereinafter "Walker"), deputies employed by the Madison County Sheriff's Office; FSB Employee #1, an employee at the Illinois State Police Firearms Bureau; and Brendan Kelly, the Illinois State Police Director (hereinafter "Director Kelly"). *Id.* Defendants Sandidge and Walker timely filed their Notice of Removal in this Court on September 13, 2024 on the basis of the Court's federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. (Doc. 1).

Defendants Sandidge and Walker filed a Motion to Dismiss for Failure to State a Claim on October 21, 2024, arguing that Hosfelt and Greer failed to comply with Federal Rules of Civil Procedure 8 and 10. (Doc. 14). This Court agreed, and, on November 20, 2024, dismissed Hosfelt's and Greer's Complaint without prejudice. (Doc. 28).

Hosfelt and Greer filed the operative First Amended Complaint on November 26, 2024. (Doc. 29). The following facts are taken from Plaintiffs' First Amended Complaint, which this Court accepts as true for purposes of evaluating a motion to dismiss. (*See id.*); *see Lax v. Mayorka*s, 20 F.4th 1178, 1181 (7th Cir. 2021). Defendants Sandidge and Walker, both deputies at the Madison County Sheriff's Office, received an anonymous complaint on or about July 21, 2024 and were dispatched to Plaintiff Hosfelt's residence in Madison County, Illinois, at or around 9:00 p.m. (*Id.*, p. 2). At Hosfelt's residence, Sandidge and Walker entered the premises

and located Plaintiffs Hosfelt and Greer in the backyard. (*Id.*). Hosfelt and Greer allege that they were arrested on grounds that were not apparent and without probable cause, and that they were placed in a police vehicle and subsequently detained. (*Id.*). Hosfelt and Greer were neither armed nor in the immediate vicinity of firearms when Sandidge and Walker encountered them, but state that spent shotgun shell hulls were located in the yard. (*Id.*). Hosfelt and Greer assert that they were not charged with any crime as a result of the incident. (*Id.*, p. 4).

Following the incident, Sandidge completed "'Clear and Present Danger Forms on both Hosfelt and Greer'" and submitted them to Madison County Sheriff's Lieutenant Stipcack[2] "for forwarding to the [Illinois State Police]." (*Id.*). Plaintiffs allege that Sandidge completed the forms with no evidence or information that Hosfelt or Greer presented a clear or present danger to any person or to themselves, and allegedly acted with the specific intent to cause the revocation of Hosfelt's and Greer's FOID cards and deprive them of their Second Amendment rights. (*Id.*, p. 5). According to Plaintiffs, as a result of Sandidge's completion of the form, which was purportedly forwarded to the Illinois State Police, Defendant FSB Employee #1, despite knowing it was illegal to do so, acted to suspend and/or revoke Hosfelt's and Greer's FOID cards. (*Id.*, p. 6–7).

---

[2] This Court believes that Plaintiffs are referring to Lieutenant Brian Stipcak, whose name is spelled differently from the spelling found in Plaintiffs' First Amended Complaint. *See Sheriff's Administration*, MADISON COUNTY ILLINOIS, https://www.madisoncountyil.gov/departments/sheriff/sheriff_s_administration.php [https://perma.cc/6G5Q-ZYFF] (last visited May 16, 2025).

Hosfelt and Greer brought claims against Sandidge and Walker in their individual capacities, FSB Employee #1 in their individual capacity, and Director Director Kelly in his official capacity, for alleged violations of Hosfelt and Greer's rights under the Second, Fourth, and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983. (*Id.*).[3] On December 12, 2024, Hosfelt and Greer filed a Motion for Preliminary Injunction as to Counts IX and X of the First Amended Complaint. (Doc. 37). On January 10, 2025, Hosfelt and Greer filed a Notice of Withdrawal of their Motion for Injunctive Relief. (Doc. 44).

On January 23, 2025, Sandidge and Walker filed the instant Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. 45). On the same day, Director Kelly filed his Motion to Dismiss Counts IX and X. (Doc. 46). Hosfelt and Greer filed a Response in Opposition to Sandidge and Walker on January 28, 2025. (Doc. 47). Plaintiffs filed a Response in Opposition to Director Kelly's Motion to Dismiss on January 29, 2025.

---

[3] In Counts I and II, Hosfelt alleges that he was unlawfully arrested by Sandidge (Count I) and Walker (Count II) in violation of his rights under the Fourth Amendment to the U.S. Constitution. (*Id.*, pp. 1–3).

In Counts III and IV, Greer alleges that he was unlawfully arrested by Sandidge (Count III) and Walker (Count IV) in violation of his rights under the Fourth Amendment to the U.S. Constitution. (*Id.*, pp. 3–4).

In Counts V and VI, Hosfelt (Count V) and Greer (Count VI) allege that Sandidge violated their rights under the Second Amendment to the U.S. Constitution by causing the revocation of Hosfelt's (Count V) and Greer's (Count VI) Firearm Owner's Identification cards ("FOID cards"). (*Id.*, pp. 4–7).

In Counts VII and VIII, Hosfelt (Count VII) and Greer (Count VIII) allege that FSB Employee #1 acted to suspend and/or revoke Hosfelt's (Count VII) and Greer's (Count VIII) FOID cards in violation of the Second Amendment. (*Id.*, p. 6–7).

In Count IX, Hosfelt and Greer allege that Director Kelly, in his official capacity, violated their rights under the Fourteenth Amendment for causing their FOID cards to be revoked. (*Id.*, pp. 7–10). In Count X, Hosfelt and Greer allege that Director Kelly, in his official capacity, violated their rights under the Second Amendment for causing their FOID cards to be revoked. (*Id.*, pp. 10–13).

(Doc. 48). Director Kelly filed a Reply in Support of his Motion to Dismiss on February 11, 2025. (Doc. 49).

**APPLICABLE LAW AND LEGAL STANDARDS**

## I.    Federal Rules of Civil Procedure 8 and 10

Federal Rules 8 and 10 exist "to give defendants fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011); *see also Intercom Ventures, LLC v. FasTV, Inc.*, No. 13 C 232, 2013 WL 2357621 at *5 (N.D. Ill. May 28, 2013) ("a complaint must describe the plaintiff's claims and the ground supporting them in 'sufficient detail to give the defendants fair notice' of the claim alleged against them."). To achieve this goal, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Additionally, Rule 8 requires that "[e]ach allegation must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). Rule 10 further supports this goal by requiring that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count or defense." FED. R. CIV. P. 10(b). These Rules, while not setting a high bar at the pleading stage, do require that plaintiffs abide by them at risk of pleading themselves out of a case. That may occur "where the lack of organization and basic coherence renders a complaint too confusing to determine the facts that constitute the alleged wrongful conduct." *Stanard*, 658 F.3d at 798; *see also Mohammed v. Prairie State Legal Servs., Inc.*, No. 20-2419, 2021 WL 4962988 at *1 (7th Cir. Oct. 26, 2021) ("unintelligibility justifies dismissal").

## II.    Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). Mootness is a jurisdictional issue properly analyzed under a motion to dismiss for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Chicago Joe's Tea Room, LLC v. Vill. of Broadview*, 894 F.3d 807, 814 (7th Cir. 2018) (citing *Winslow v. Walters*, 815 F.2d 1114, 1116 (7th Cir. 1987)). "It is well established that the federal courts have no authority to rule where the case or controversy has been rendered moot." *Cornucopia Inst. v. USDA*, 560 F.3d 673, 676 (7th Cir. 2009) (citing *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992). "A case is moot when the issues presented are no longer live, or the parties lack a legally cognizable interest in the outcome." *Id.* (citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980)) (internal quotations omitted).  If an event occurs while a case is pending that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the case must be dismissed. *Chicago Joe's Tea Room*, 894 F.3d at 815 (citing *Cornucopia Institute*, 560 F.3d at 676; *Church of Scientology of California*, 506 U.S. at 12. This analysis proceeds on a claim-by-claim basis. *Chicago Joe's Tea Room*, 894 F.3d at 815 (citing *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 493 (7th Cir. 2011) (holding that even where plaintiff's claim for employment benefits was moot because, following the filing of the complaint, plaintiff was paid the entire amount requested in her complaint, including the proper amount going forward, her claim for attorneys'

fees was not moot); 13B WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3533 (3d ed.) ("As long as damages can be claimed, it remains necessary to resolve the issues that control damages liability. The continuing availability of an injunction, declaratory judgment, or other form of specific relief may be much more uncertain.")). Although a plaintiff's request for injunctive relief may become moot during the pendency of a lawsuit, requiring dismissal, if there remains a request for declaratory relief or monetary damages, a court may still be required to adjudicate the case on its merits. *Wernsing v. Thompson*, 423 F.3d 732, 745 (7th Cir. 2005) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *FDIC v. Ernst & Young LLP*, 374 F.3d 579, 581 (7th Cir. 2004); *Crue v. Aiken*, 370 F.3d 668, 677–78 (7th Cir. 2004).

A party's standing is an additional jurisdictional issue properly analyzed under Rule 12(b)(1). *See Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The federal judiciary is empowered only to decide "Cases" and "Controversies" under Article III of the U.S. Constitution, a limitation that "confines federal courts to hearing only those disputes that are sufficiently concrete and presented in a form historically recognized as appropriate for judicial resolution." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1151 (7th Cir. 2020) (citing U.S. CONST. art. III, § 2; *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). To invoke the court's adjudicative power, a plaintiff must plead standing to sue, "a requirement 'rooted in the traditional understanding of a case or controversy.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). In order to survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer*, 770 F.3d at 588–89. When

evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), "a court should use *Twombly-Iqbal*'s plausibility requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) (internal quotations omitted); *see also Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (stating that, when deciding a facial challenge to subject matter jurisdiction—that is, when the defendant argues that the plaintiff's allegations as to jurisdiction are inadequate—"the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

To have standing to sue within the meaning of Article III, a plaintiff must have: (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Fox*, 980 F.3d at 1151 (citing *Spokeo*, 578 U.S. at 338). More specifically, the test for injury in fact "asks whether the plaintiff 'suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical.'" *Id.* Where a party challenges the factual existence of the court's subject matter jurisdiction, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (citing *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008)).

ANALYSIS

Pending before this Court are two Motions to Dismiss filed by three different Defendants. This Court will first begin its analysis with Sandidge and Walker's Motion, followed by an analysis of Director Kelly's Motion.

## I.    Motion to Dismiss by Defendants Sandidge and Walker (Doc. 45)

To properly analyze Sandidge and Walker's Motion to Dismiss, it is important to revisit the brief procedural history of this matter for context. Following Hosfelt and Greer's filing of their original Complaint in Madison County Circuit Court on August 5, 2024 (which Sandidge and Walker then removed to this Court) (*see* Doc. 1), Sandidge and Walker filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 8 and 10. (Doc. 14). In that Motion, Sandidge and Walker argued that Plaintiffs' First Amended Complaint should be dismissed because they failed to comply with Federal Rules 8 and 10, such that Defendants lacked the opportunity to understand the claims against them and develop meaningful defenses. (*Id.*). At the time, this Court agreed, granted their Motion in its entirety, and dismissed Plaintiffs' Complaint without prejudice on November 20, 2024. (Doc. 28).

This Court found the following defects with Plaintiffs' Complaint, such that dismissal was warranted: first, the Complaint named "Jason Dandidge" in the case caption as a Defendant, and subsequently referred to this person throughout the Complaint as "Sandidge," the purported correct spelling, as well as "Sandage" and "Sanderson." (*Id.*, p. 3). This Court found that "[w]hile the context perhaps makes it likely that these are all one individual, anyone reading this complaint will be unsure as to whether that is the case." (*Id.*). Second, this Court found that Counts III and IV

Page 9 of 21

appeared to be entirely duplicative of Counts I and II, such that it seemed that Counts III and IV asked for the same relief against the same two Defendants by the same Plaintiff. (*Id.*). Third, this Court found that there was a lack of clarity as to what the exact alleged constitutional violations were that Plaintiffs brought. (*Id.*). In Count V, Plaintiffs alleged that their rights under the Second Amendment and Fourteenth Amendment were violated; it was unclear if Plaintiffs were bringing a procedural due process claim, whether they were alleging a violation of the Second Amendment as incorporated to apply to the States by the Fourteenth Amendment, or something else. (*Id.*, p. 4). Additionally, in Count I, this Court found Plaintiffs' Complaint unclear as to whether it alleged a violation of the Fourth Amendment because of an unlawful arrest, and unlawful search, or both, which violated Rule 10's requirement of separate occurrences being separated into different counts. (*Id.*). Fourth, this Court found that Plaintiffs' numbering scheme in their Complaint was inaccurate and repetitive, which also violated Rule 10. (*Id.*). Taken together, this Court found that these defects failed to provide the Defendants with proper notice of who the named Defendants were, what causes of action were being brought against them, and what the nature and scope of those claims were, warranting dismissal without prejudice. (*Id.*, p. 5).

Hosfelt and Dandidge subsequently filed their First Amended Complaint on November 26, 2024. (Doc. 29). Plaintiffs' de minimis revisions to their First Amended Complaint appear to have attempted to address the concerns outlined by the Court as described above. Whereas the original Complaint listed four different spellings of purportedly the same named Defendant, Plaintiffs' First Amended Complaint now vacillates between two different spellings—"Sandidge" and "Sandage"—when

referring to Defendant Sandidge. (*See* Doc. 29). To address this Court's confusion as to the duplicative counts and allegations brought, Plaintiffs added minimally descriptive headings below each count, which state the purported legal violation that is alleged as well as which Plaintiff is bringing the claim against which Defendant.[4] (*See id.*). As for this Court's finding that Hosfelt and Greer did not make it entirely clear which constitutional violations they were bringing, Plaintiffs' First Amended Complaint now alleges a violation by Defendant Sandidge of Plaintiffs' constitutional rights under the Second Amendment as incorporated by the Fourteenth Amendment. (Doc. 29, p. 5). Hosfelt and Greer also removed the reference to an unlawful search by Defendants, seeming to proceed only on claims of false arrest. (*See id.*). Finally, to address this Court's finding that they violated Rule 10 by failing to accurately number their paragraphs, while Plaintiffs still have single paragraphs numbered as, for example, 15–28 and claim to "adopt[] and incorporate[] paragraphs 1 through 14 of Count I" wholesale, the numbering is continuous throughout the document as opposed to beginning at 1 again upon reaching a new count. (*See id.*, p. 3).

Now, in their Motion to Dismiss, Defendants' arguments as to why this Court should dismiss Plaintiffs' First Amended Complaint are substantively identical to their earlier arguments: they state that Plaintiffs' First Amended Complaint should be dismissed because they have failed to comply with Federal Rules 8 and 10, such that Sandidge and Walker lack the opportunity to understand the claims against them and develop meaningful defenses. (Doc. 45). Aside from one sentence in their

---

[4] For example, below Count I, Plaintiffs have added a subheading that reads "(Arrest, Hosfelt v. Sandage)." (Doc. 29, p. 1).

Introduction section that states that they previously successfully moved to dismiss Plaintiffs' Complaint, Defendants, confusingly, do not address *any* of the amendments that Plaintiffs made to their Complaint at all. The fact that Defendants also seem to aptly summarize the claims brought against them, however, belies their argument that they are unable to comprehend Plaintiffs' complaints. In their Motion, Sandidge and Walker state:

> [I]n Counts I, II, III and IV, Plaintiffs' attempt to allege a claim for false arrest, as well as a claim for unlawful search or seizure. Further, in Counts V and VI, Plaintiffs attempt to allege a claim for violations of the Second Amendment, as well as a claim for due process violations.

(*Id.*, p. 7). This Court similarly finds that, while minimally so, Plaintiffs' amendments to their original Complaint remedy the defects that Sandidge and Walker initially raised in their first Motion to Dismiss and that this Court identified in its Order dismissing the case. (Doc. 28). Sandidge and Walker appear to now be on notice of the types of claims brought against them, as demonstrated by their summary above. They do not offer any reason or argument to this Court why Hosfelt and Greer's First Amended Complaint is deficient such that it does not comply with Federal Rules of Civil Procedure 8 and 10. This Court, while reiterating that Plaintiffs' efforts to amend their complaint were minimal and primarily superficial in nature, finds that Plaintiffs' First Amended Complaint passes muster to survive Defendants' Motion to Dismiss.

## II.    Motion to Dismiss by Defendant Director Kelly (Doc. 46)

Defendant Director Kelly, sued in his official capacity as the Director of the Illinois State Police, argues that Counts IX and X of Plaintiffs' First Amended

Complaint should be dismissed for lack of jurisdiction and for failure to state a claim. (Doc. 46). Because the jurisdictional issues are dispositive, the Court need not reach Director Kelly's arguments regarding Plaintiffs' failure to state a claim.

In Count IX, Hosfelt and Greer purport to bring a cause of action under 42 U.S.C. § 1983 for an alleged violation of their due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution. (Doc. 29, p. 9). Hosfelt and Greer allege that the Illinois State Police's "'clear and present danger' system", "as presently actually operated, and as operated against Plaintiffs in this case," deprives them of their rights to due process. (*Id.*). Plaintiffs purportedly claim that the Illinois State Police and other law enforcement have a purposeful, unconstitutional practice of revoking the FOID cards of Illinois residents even where no danger is clear nor present, and that individuals who are deprived of their rights to possess firearms do not have an adequate way to challenge the revocation of their firearms under this system. (*Id.*, pp. 7–10). Plaintiffs request from the Court the following relief:

> (1) [E]njoin, both preliminarily and permanently, defendant Kelly from revoking, suspending of otherwise invalidating, and maintaining the invalidation of Plaintiffs' FOID cards, based on the Clear and Present danger report at issue in this case, (2) enjoin Defendant Kelly, from revoking FOID cards for an alleged clear and present danger in the future, based only on a preponderance of the evidence, and instead, requiring clear and convincing evidence, as well as prior notice and opportunity to be heard (3) enjoining Defendant Kelly from revoking FOID cards, based on an alleged clear and present danger in the future, unless the danger is both 'clear' and 'present' as those terms are used by the U.S. Supreme Court, and said conduct is not merely 'reckless' as indicated by United States v. Rahimi, 602 U.S. ___ (2024), plus costs of suit and attorney fees under 42 U.S.C. 1988, and such other, further and different relief as allowed by law or equity.

(*Id.*, p. 10).

In Count X, Hosfelt and Greer purport to bring a cause of action under 42 U.S.C. §
1983 for an alleged violation of their rights guaranteed by the Second Amendment to
the U.S. Constitution. (Doc. 29, p. 10–13). Plaintiffs both incorporate and allege the
same facts contained in Count IX and request the exact same relief as in Count IX.
(*Id.*, p. 13). Director Kelly first argues that Counts IX and X of Hosfelt's and
Sandidge's First Amended Complaint should be dismissed because these two counts
are moot, stripping the Court of its jurisdiction to hear them. (Doc. 46, p. 5). Director
Kelly next argues that Plaintiffs' Counts IX and X should be dismissed because they
lack standing to sue for their requested relief. (Doc. 46, p. 8). Finally, Director Kelly
argues that Plaintiffs' Counts IX and X should be dismissed because Plaintiffs fail to
state valid claims for injunctive relief. (Doc. 46, p. 10).

### A. Request for Injunctive Relief

This Court will first address Hosfelt's and Greer's claims in Counts IX and X
for relief in the form of "enjoin[ing], both preliminarily and permanently, defendant
Kelly from revoking, suspending of otherwise invalidating, and maintaining the
invalidation of Plaintiffs' FOID cards, based on the Clear and Present danger report
at issue in this case." (*See* Doc. 29, p. 10). Director Kelly argues that this claim for
relief is moot because, while he admits that Plaintiffs' FOID cards were revoked based
on the clear and present danger determinations submitted by Defendant Sandidge
following the July 21, 2024 alleged incident, they have since been restored between
the time time that Plaintiffs filed their First Amended Complaint on November 26,
2024, and the time that Director Kelly filed his Motion on January 1, 2025. (*See* Doc.

46, p. 5). Because they do not seek money damages or other relief, this claim is moot and must be dismissed.

This Court, upon a challenge to the factual existence of its jurisdiction, may evaluate whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists. *See Apex Digital, Inc.*, 572 F.3d at 444 (citing *Evers*, 536 F.3d at 656–57). Here, Defendants point to the fact that, in their First Amended Complaint, Hosfelt and Greer requested preliminary injunctive relief in the form of enjoining Director Kelly from revoking and maintaining the revocation of Plaintiffs' FOID cards based on the clear and present danger report at issue in this case. Hosfelt and Greer filed a Motion for Preliminary Injunction on December 12, 2024, specifically requesting that the Court order Plaintiffs' FOID cards reinstated. (Doc. 37, p. 9). Subsequently, Hosfelt and Greer filed a Notice of Withdrawal of their Motion for Preliminary Injunction, "based on the assertion of counsel for the State that Plaintiffs' FOID cards have been reactivated and/or are being reprinted and mailed to Plaintiffs, as appropriate." (Doc. 43). Director Kelly argues that, based on Plaintiffs' withdrawal of their motion, the dispute about Plaintiffs' FOID card revocations has been fully resolved. (Doc. 46, p. 5). Hosfelt and Greer, in their Response and Objection to Director Kelly's Motion to Dismiss, concede this point as well, stating that Defendant Director Kelly has since reissued apparently valid FOID cards. (Doc. 48, p. 2).

Based on the facts established above, it is clear that Hosfelt and Greer's requested relief of asking this Court to preliminarily and permanently enjoin Director Kelly from revoking and maintaining the revocation of their FOID cards based on the

clear and present danger report at issue in this matter is moot, and this Court lacks

jurisdiction to adjudicate this claim or issue any relief. The revocation of Plaintiffs'

FOID cards based on Defendant Sandidge's clear and present danger report has been

resolved by undisputed fact that Plaintiffs' FOID cards have been reinstated or

reissued, as appropriate. Accordingly, this Court finds that this request for relief is

moot.[5]

## B. Claims for Future Injunctive Relief

This Court will next analyze Hosfelt's and Greer's claims in Counts IX and X

for relief in the form of

> (2) [E]njoin Defendant Kelly, from revoking FOID cards for an alleged
> clear and present danger in the future, based only on a preponderance
> of the evidence, and instead, requiring clear and convincing evidence, as
> well as prior notice and opportunity to be heard (3) enjoining Defendant
> Kelly from revoking FOID cards, based on an alleged clear and present
> danger in the future, unless the danger is both 'clear' and 'present' as
> those terms are used by the U.S. Supreme Court, and said conduct is not
> merely 'reckless' as indicated by United States v. Rahimi [sic], 602 U.S.
> ___ (2024), plus costs of suit and attorney fees under 42 U.S.C. 1988, and
> such other, further and different relief as allowed by law or equity.

(*See* Doc. 29, p. 10).

As to these two Counts, it is not entirely clear to Director Kelly, nor to this

Court, nor apparently to the Plaintiffs themselves (as they write in their Response to

---

[5] The parties have argued, in their briefs, the applicability of certain exceptions to the mootness
doctrine including "capable of repetition yet evading review" and voluntary cessation. This Court does
not find that any exceptions to the mootness doctrine are applicable as to this request for relief because
Plaintiffs have not made a showing as to the likelihood that they would again be subject to the alleged
illegal activity. *See City of Los Angeles v. Lyons*, 461 U.S. 95 at 109 (1983). Plaintiffs have requested
this Court to enjoin the revocation and maintaining the revocation of their FOID cards with respect to
the clear and present danger report *at issue in this matter*, which is the report filed by Defendant
Sandidge in July 2024. Plaintiffs have not argued or made any showing that they are subject to a
future revocation of their FOID cards on the basis of this seemingly resolved July 2024 clear and
present danger report.

Director Kelly's Motion to Dismiss) whether they are requesting this Court to enjoin Director Kelly from revoking the FOID cards of *Plaintiffs* or the FOID cards of *other individuals* in the future. (*See* Doc. 48, p. 4 ("Whether this relief is deemed to be a request across the board, or only as to Plaintiffs, it is still requested relief that has not been granted, but which this Court could grant.")). Director Kelly argues that, either way, the Court also lacks jurisdiction to grant this relief and therefore the claims should be dismissed. (Doc. 46).

Director Kelly argues that, as to the extent Plaintiffs seek to enjoin FOID card revocations with respect to other individuals based on future conduct giving rise to clear and present danger reports, these claims are speculative, and Plaintiffs lack standing to bring them. (Doc. 46, p. 8). This Court agrees that Hosfelt and Greer lack standing to sue on behalf of hypothetical Illinois citizens. *See Brown v. Kelly*, No. 24-CV-02338-SPM, 2025 WL 1026422, at *3 (S.D. Ill. Apr. 7, 2025) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

In relevant part, in *Brown*, the plaintiff sued the same defendant as in the present case (Director of Illinois State Police Brendan Kelly) to challenge the constitutionality of the Illinois FOID card statutory scheme based on the Second Amendment. *Id.* at *3. Plaintiff requested that the Court enjoin Director Kelly from revoking or otherwise invalidating FOID cards based on the statutory scheme as applied to Illinois residents meeting specific criteria that may trigger revocation of their FOID cards. *Id.* ("Brown requests for this Court to 'enjoin Defendant Kelly . . . from suspending, revoking or otherwise invalidating any FOID cards based on [the statute], as it presently exists, for persons merely charged, but not convicted of any

felony charge . . . .”). This Court held that Brown, as an individual plaintiff, could not assert claims on behalf of unnamed and hypothetical Illinois citizens and therefore dismissed any claims seeking this type of relief. *Id.*

The Court finds *Brown* directly applicable to the present facts and holds that, to the extent that Counts IX and X of Hosfelt’s and Greer’s First Amended Complaint request prospective injunctive relief to enjoin the revocation of the FOID cards of other individuals, these claims must be dismissed because Hosfelt and Greer lack standing.

As to the extent Plaintiffs seek to enjoin FOID card revocations with respect to themselves only based on future conduct giving rise to clear and present danger reports, Director Kelly argues that Hosfelt and Greer also lack standing. (Doc. 46, p. 9). Director Kelly asserts that Hosfelt’s and Greer’s claimed injuries are too speculative in nature to give rise to Article III standing. (*Id.*, p. 10). Hosfelt and Greer argue that they have standing to request this relief because “[n]othing stops Defendant from revoking Plaintiff’s FOID cards, and effectively disarming them, based on the same clear and present danger statute and procedure used the first time,” because the statute and procedure remain in effect and unchanged and Director Kelly does not claim anything to the contrary. (Doc. 48, p. 5). Plaintiffs claim that they are “likely to sit in their own back yard, and mind their own business in the future,” and thus, “at least, run a reasonably possibility of a repeat performance” of law enforcement officers issuing a clear and present danger report resulting in the revocation of their FOID cards. (*Id.*, p. 3).

A key principle of the standing doctrine that an abstract injury is not enough to invoke the adjudicative powers of the federal courts. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) Rather, "[t]he plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.*

In *Lyons*, plaintiff sought preliminary and permanent injunctive relief against the City of Los Angeles for an alleged unconstitutional police practice and procedure listing which physicals holds could be used when detaining individuals. *Id.* at 98. Plaintiff's "standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers." *Id.* at 105. Plaintiff alleged that he had been detained in an unlawful chokehold five months prior to filing his complaint and was at risk of being stopped by local law enforcement officers and being detained in an unlawful control hold again in the future. *Id.* at 108. The Court held that that the fact that a plaintiff suffered a harm at some point in the past does nothing to establish a real and immediate threat that they would suffer the same harm at any point in the future. *Id.* at 104. Further, a mere allegation as to a routine pattern or practice, without more, does not establish a case or controversy between the parties. *Id.* Thus, due to the speculative nature of Plaintiff's alleged injury, the Court held that he lacked standing to seek injunctive relief against the use of this procedure.

This case does not present a challenge to the statutory scheme of issuing and revoking FOID cards, but rather is a challenge to a practice and procedure of the

Illinois State Police and local law enforcement officials like in *Lyons*. Plaintiffs' argument that they were once subjected to an allegedly unlawful practice and procedure of the Illinois State Police and are likely to be subject to that practice and procedure again in the future is too speculative to permit them to proceed in federal court. Hosfelt and Greer fail to establish a *real and immediate threat* that they would, at some time in the future, be subject to a law enforcement encounter related to their possession of firearms. Additionally, they fail to establish a real and immediate threat that, upon such encounter, an officer would complete a clear and present danger report that would result in the revocation of their FOID cards in the future. Thus, they lack an injury able to satisfy Article III's standing requirement such that they may bring their claims before this Court. Further, Hosfelt and Greer fail to present an "exceptional situation" that would compel the Court to apply the "capable of repetition yet evading review" doctrine, which requires a reasonable showing that they would again be subject to the alleged illegal activity. *See Lyons*, 461 U.S. at 109. Accordingly, based on this Court's analysis, this Court is bereft of jurisdiction to consider Counts IX and X of Plaintiffs' First Amended Complaint, and dismisses these Counts without prejudice.

CONCLUSION

For the reasons set forth above, Defendants Sandidge and Walker's Motion to Dismiss Plaintiffs' First Amended Complaint (Doc. 45) is **DENIED**, and Defendant Kelly's Motion to Dismiss Counts IX and X (Doc. 46) is **GRANTED**. Counts IX and X are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs shall proceed with Counts I

through VIII of their First Amended Complaint against Defendants Sandidge,
Walker, and FSB Employee #1.

**IT IS SO ORDERED.**

**DATED:  May 16, 2025**

> <u>**s/ *Stephen P. McGlynn***</u>
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**